IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UBS BANK USA,<br><br>    Plaintiff,<br><br><br><br><br><br>            vs.<br><br><br>IBBY, LLC,<br><br>        Defendant. | MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS<br><br><br><br>Case No. 2:09-CV-372 TS |

This issue is before the Court on Plaintiff's Motion to Dismiss Defendant's four counterclaims: (1) Negligence, (2) Negligent Misrepresentation, (3) Promissory Estoppel, and (4) Breach of Fiduciary Duty.

## I. Background

The underlying issues in this case surround a loan agreement between Plaintiff, as lender, and Defendant, as borrower.  On October 31, 2008, Defendant filed a complaint in a Washington State Superior Court against UBS Bank (Plaintiff) and UBS Financial.[1]  On April 30, 2009, the Washington court dismissed, without prejudice, the complaint against Plaintiff, based on claims

_____

[1]Docket No. 16 at 2.

similar to those presented as counterclaims in this action, pursuant to a forum selection clause in the loan agreement.[2]  The Washington court also compelled Defendant to arbitrate all claims against UBS Financial in accordance with the arbitration provision in the account agreement between UBS Financial and Defendant.[3]  On April 28, 2009, Plaintiff filed this action to recover $146,101.84 Defendant has not repaid.[4]  Defendant filed its counterclaims and now Plaintiff moves to dismiss the counterclaims.

## II. Facts

The following facts are taken from Defendant's counterclaims and, as the nonmoving party, are taken as true for the purposes of this motion.  Timothy and Kathy Ibbetson are the sole members of Defendant, Ibby, LLC (Ibby).[5]  Sometime around November, 2005, the Ibbetsons sold their interest in a family business, netting a substantial sum, which subsequently constituted their entire net worth.[6]  Novices in the investment world, the Ibbetsons initially deposited this money into a credit union.[7]  Shortly after this initial deposit the Ibbetsons were referred to Mike Mumford and UBS.[8]  Mr. Mumford is an agent and/or employee of UBS Bank USA (Plaintiff)

---

[2] *Id*.; Docket No. 16-4.

[3] Docket No. 16 at 2.

[4] Docket No. 1.

[5] Docket No. 7 at 8.  Although Ibby, LLC the entity is the actual named party, all the facts and correspondence occurred between between the Ibettsons, as principals of Ibby, and the Bank.

[6] *Id*. at ¶ 8.

[7] *Id*. at ¶ 8.

[8] *Id*. at ¶ 8.

and UBS Financial Services, Inc.[9]  Mr. Mumford counseled the Ibbetsons to remove their money from the credit union and place it instead with him at UBS Financial.[10]  The Ibbetsons were reluctantly persuaded to invest their net worth with UBS Financial.[11]  Upon doing so, the Ibbetsons waived their right to tens of thousands of dollars already accrued as interest in the credit union account, but Mr. Mumford assured them they would make up this money within a matter of months at UBS.[12]  Mr. Mumford and/or Plaintiff devised and implemented a "highly speculative and risky investment strategy" relying on margin transactions and a line of credit through Plaintiff in order to generate the high returns promised.[13]

Mr. Mumford advised the Ibbetsons to borrow money on a margin line of credit to acquire funds necessary to finance a real estate investment instead of using money from the principal balance in their UBS Financial account or any other means.[14]  Mr. Mumford represented to the Ibbetsons that the amount in their account would allow them to receive a low rate of approximately 3% on the margin line of credit, but failed to inform them this rate would be a variable, floating rate.[15]  Mr. Mumford also negated the suggestion of risk by telling the Ibbetsons the line of credit would be structured in such a way as to protect them from any

---

[9]*Id.* at ¶ 9.

[10]*Id.* at ¶ 11.

[11]Docket No 16-7 at 5.

[12]*Id.* at 5.

[13]Docket No 7 at ¶ 12.

[14]*Id.* at ¶¶ 13-14.

[15]*Id.* at ¶15.

potential downside risks and market fluctuations.[16]  Mr. Mumford implored the Ibbetsons to "let the money in their investment account work for them."[17]

    In reviewing the June 2008 account statements from UBS Financial, Mr. Ibbeston noticed a $170,000 loss in the account.[18]  Mr. Ibbetson proceeded to contact Mr. Mumford, requesting a change in both investment strategies and advice.[19]  These requests, however, were denied and losses persisted, resulting in Plaintiff selling Defendant's equity positions to pay down the line of credit.[20]  The situation continued to get worse and in September of 2008, Mr. Ibbetson began calling Mr. Mumford every day to discuss selling stock.[21]  Mr. Ibbetson wanted Plaintiff to sell stock in order to pay down the line of credit and preserve the principal balance in the UBS financial accounts.[22]  Mr. Mumford, however, told the Ibbetsons to "hang in there" because the "market will be back," and further recommended selling only as much stock as necessary to meet Plaintiff's margin calls or to pay for everyday expenses.[23]

    By the end of September 2008, the Ibbetsons had lost more than $700,000 and pleaded with UBS Financial to do something to prevent further losses and additional margin calls.[24]  On

---

[16]*Id.* at ¶16.

[17]*Id.* at ¶ 14.

[18]*Id.* at ¶17.

[19]*Id.* at ¶ 17.

[20]*Id.* at ¶ 17.

[21]*Id.* at ¶ 18.

[22]*Id.* at ¶ 18.

[23]*Id.* at ¶ 18.

[24]*Id.* at ¶ 19.

October 6, 2008, Mr. Mumford called Mr. Ibbetson and stated for the first time he wanted to go to Plan B.[25]  Plan B was to sell about $300,000 worth of investments to provide a buffer between the line of credit and the value of the Ibbetson's portfolio to protect their UBS Financial account against further decimation from margin calls on the line of credit.[26]  This was the type of strategy change the Ibbetsons had been asking for since June 2008.[27]

As part of Plan B, Mr. Mumford recommended selling equity positions across the board, and using a trading desk that would charge a negligible fee to effectuate the trades.[28]  However, there was a "glitch or error" in selling the positions resulting in the need to redo the sales using handwritten tickets.[29]  Even though Mr. Mumford represented to the Ibbetsons that the error would not effect their investment account, the error caused further depletion because the market continued to drop resulting in additional margin calls.[30]  On October 9, 2008, Mr. Mumford called the Ibbetsons again and told them he was going to liquidate their entire portfolio because the bottom had dropped out of the market.[31]  On October 13, 2008, Mr. Mumford called Mr. Ibbetson to tell him there was a deficit balance in their account in the amount of $150,000, indicating that the Ibbetsons had lost more money than they had invested with UBS Financial.

---

[25] *Id*. at ¶ 19.

[26] *Id*. at ¶ 20.

[27] *Id*.  at ¶ 20.

[28] *Id*. at ¶ 21.

[29] *Id*. at ¶ 21.

[30] *Id*. at ¶ 21.

[31] *Id*. at ¶ 22.

During this conversation Mr. Ibbetson requested an accounting of the alleged debt, which was never provided to him.[32]

The Ibbetsons then scheduled a meeting with Mr. Mumford, A. Tighe Smith, and Rhona Leeds, representatives of UBS Financial and/or Plaintiff.[33]  During this meeting, Mr. Mumford admitted that he gave the Ibettsons "shitty advice."[34]  The Ibbetsons expressed distress regarding the manner in which losses were sustained in addition to their concern over their trust account and inquired as to how the alleged deficit balance would affect it, if at all.[35]  Plaintiff's agents and/or representatives indicated the trust account would not be affected at all.[36]  Yet, when the Ibbetsons attempted to transfer the family trust account from UBS Financial's control to another brokerage firm, UBS Financial and/or Plaintiff refused the request.[37]  UBS Financial and/or Plaintiff then froze the family trust account and denied the Ibbetsons any ability to make investment changes to the account.[38]  The family trust account continued to suffer significant losses.[39]  In addition to freezing the trust account, Plaintiff called Mr. Ibbetson and threatened to file a lawsuit and to put a lien on all of his personal assets if payment in full of the alleged deficit

---

[32]*Id*. at ¶ 23.

[33]*Id*. at ¶ 24.

[34]*Id*. at ¶ 24.

[35]*Id*. at ¶¶ 25-26.

[36]*Id*. at ¶ 27.

[37]*Id*. at ¶ 27.

[38]*Id*. at ¶ 27.

[39]*Id*. at ¶ 27.

balance owing to Plaintiff was not immediately received.[40]  On October 22, 2008, the Ibbetsons received notification from Plaintiff indicating the Ibbetsons had requested cancellation of their credit card accounts.  The Ibbetsons in fact made no such request and had not previously been made aware that any of their cards would be affected in any manner.[41]  This unilateral cancellation of the Ibbetson's credit cards cut off their only available credit and negatively impacted their credit rating.[42]

### III. Issues

Plaintiff argues the counterclaims should be dismissed because they "are almost entirely based on the conduct of UBS Financial Services," and therefore are subject to arbitration.[43]  This assertion is based on Defendant naming Mr. Mumford and alleging specific conduct carried out by Mr. Mumford in its facts.[44]  Defendant, on the other hand, argues that it dealt solely with Mr. Mumford in all of its activities with UBS Financial and with Plaintiff, including obtaining the line of credit.[45]  Defendant alleges that Mr. Mumford is a representative of both UBS Financial and Plaintiff.[46]

It is clear that all claims against UBS Financial must be submitted to arbitration.  The

---

[40]*Id.*  at ¶ 28.

[41]*Id.* at ¶¶ 29-30.

[42]*Id.* at ¶ 31.

[43]Docket No. 16, at 2; Docket 16-4; Docket 16-5 at 3-4.

[44]Docket No. 16 at 9-10.

[45]Docket No. 17 at 2.

[46]*Id.*

question is whether Defendant has alleged a sufficient counterclaim against Plaintiff to survive a

motion to dismiss.

## IV. Standard of Review

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual

allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the

light most favorable to Defendant as the nonmoving party in this case.[47]   This standard applies to

both the original and amended complaint.[48]   Defendant must provide "enough facts to state a

claim to relief that is plausible on its face."[49]   But, the court "need not accept conclusory

allegations without supporting factual averments."[50]   "The court's function on a Rule 12(b)(6)

motion is not to weigh potential evidence that the parties might present at trial, but to assess

whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may

be granted."[51]

The Supreme Court explained that a plaintiff must "nudge [ ] [his] claims across the line

from conceivable to plausible" in order to survive a motion to dismiss.[52] Thus, the mere

metaphysical possibility that some plaintiff could prove some set of facts in support of the

---

[47]*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[48]*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[49]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (dismissing complaint where Plaintiffs "have not nudged their claims across the line from conceivable to plausible").

[50]*Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

[51]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[52]*Id*.

pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.[53]

### IV. Discussion

Plaintiff argues that Defendant has not alleged any facts against Plaintiff because all of the factual allegations name Mr. Mumford, an employee of UBS Financial.  Additionally, Plaintiff states that it "does not exercise control over the conduct of UBS Financial Services or the investment advice it provides."[54]  Plaintiff further argues that Defendant is collaterally estopped from litigating its claims against them in this Court.  Defendant counters that Mr. Mumford is an agent of both UBS Financial and Plaintiff, that Mr. Mumford held himself out as an agent of Plaintiff by making affirmative statements about the line of credit, and that the bank is, therefore, responsible for Mr. Mumford's actions under a theory of respondeat superior.

Respondeat superior is well settled in Utah and states "that a principal [employer] is liable civilly for the tortious acts of his agent [employee] which are done within the course and scope of the agent's employment."[55]  At this point in the proceedings, the Court must take all well pleaded facts by the Defendant, as the nonmoving party, as true.  Therefore, this Court must accept as true the allegation that Mr. Mumford is an agent/representative of both UBS Financial and Plaintiff.[56]  The Court must further accept as true the allegation that the alleged statements made by Mr. Mumford were made in regards to a line of credit issued by Plaintiff and

---

[53]*The Ridge at Red Hawk, LLC  v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[54]Docket No. 16 at 10.

[55]*Phillips v. JCM Dev.*, 666 P.2d 876 (Utah 1983).

consequently create liability for Plaintiff as Mr. Mumford's principal.  Accordingly, the mere

mention of Mr. Mumford does not automatically trigger claims against UBS Financial to the

exclusion of Plaintiff.

At oral argument Plaintiff argued that Defendant's allegations of agency between Mr.

Mumford and Plaintiff do not meet the pleading standard under *Twombly* because they are

conclusory and unsupported by facts.  Plaintiff further argued that there is no connection between

Plaintiff and UBS Financial.  As stated above, *Twombly* stands for the principle that the moving

party must provide "enough facts to state a claim to relief which is *plausible* on its face."[57]

Defendant alleges that Mr. Mumford was the sole person they dealt with for all transactions with

both Plaintiff and UBS Financial.  Moreover, at oral argument, Plaintiff's counsel read the

following paragraph from the contract in open court:

> This application and agreement will be received and accepted by bank in the state
> of Utah, or if this application and agreement is delivered to Bank's agent, UBS
> Financial Services Inc., it will be received and accepted when received by UBS
> Financial Services Inc.'s underwriting department.  Delivery of the application
> and agreement to the borrower's financial advisor at UBS Financial Services Inc.
> will not be considered receipt or acceptance by Bank.  All decisions made by
> Bank regarding the credit line will be made in Utah.[58]

Based on the fact that the credit line agreement itself states that UBS Financial is the agent of

Plaintiff, coupled with the additional factual allegations made in the Complaint, the Court finds

that there are sufficient allegations that Plaintiff and UBS Financial are related, and that

Defendant plausibly alleges that Mr. Mumford was an agent of Plaintiff.

Further, the Court finds that the second to last sentence of the above quoted paragraph,

---

[57]*Twombly*, 550 U.S. at 547 (emphasis added).

[58]Docket No. 16-3 at ¶ 13.

stating that receipt by a financial advisor is not receipt or acceptance by the Bank, does not change the outcome.  The contract states that the line of credit shall be delivered to UBS Financial as the agent, but will not be accepted until delivered to the underwriting department. This does not change the fact the UBS Financial is an agent of Plaintiff.  The clear language stating the agency relationship between Plaintiff and UBS Financial, in addition to the fact the Defendant dealt solely with Mr. Mumford for all transactions with Plaintiff and UBS Financial, supply sufficient facts for the Court to find it is plausible that an agency relationship existed between Plaintiff and Mr. Mumford.

Furthermore, Mr. Mumford's name is mentioned in the facts in connection with the line of credit, which is solely in the domain of Plaintiff and not just UBS Financial.  Because Defendant has alleged facts that are relevant to the conduct of Plaintiff and not UBS Financial, the Court does not believe these counterclaims are subject to arbitration and will evaluate each counterclaim against the applicable standard for failure to state a claim upon which relief can be granted.

Before analyzing each counterclaim, the Court will deal with the collateral estoppel issue. Utah has four requirements for collateral estoppel:

> (1) The party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; (2) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (3) the issue in the first action must have been completely, fully, and fairly litigated; and (4) the first suit must have resulted in a final judgment on the merits.[59]

The Court will not address the first two elements because the third and fourth elements are not met.  The suit in Washington, the prior adjudication, was dismissed pursuant to a motion

---

[59]*Bringham Young Univ. v. Tremco Consultants, Inc.*, 110 P.3d 678, 686 (Utah 2005).

to dismiss as to UBS Bank without prejudice in order for Ibby to refile in Utah. Therefore it was neither completely or fully litigated, nor was it subject to a judgment on the merits.[60] Because this Court finds Defendant is not collaterally estopped from litigating its counterclaims, the Court will now discuss each of Defendant's counterclaims in turn.

*A. Negligence and Negligent Misrepresentation*

> To prevail on a negligence claim, a plaintiff must establish four essential elements: (1) that the defendant owed plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages.[61]

To establish a claim of negligent misrepresentation a party must show that (1) a statement is made by a party with a pecuniary interest in the transaction, (2) the party was in a superior position to know material facts, (3) the party carelessly or negligently made a false representation concerning them, (4) with the expectation that the other party will rely and act thereon, and the other party reasonably does so and suffers loss.[62]

Plaintiff argues Defendant's negligence claims are barred by the economic loss rule. "The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm."[63] The Utah Supreme Court has expressly adopted the interpretation of this rule as provided in

---

[60]*Id.*

[61]*Macintosh v. Staker Paving and Const. Co.*, 2009 WL 953712, at *1, (Utah Ct. App. April 9, 2009).

[62]*Price-Orem Inv. Co. v. Rollins, Brown, and Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986).

[63]*Id.*

*Grynberg v. Agric. Tech. Inc.,*[64] which states:

> The proper focus in an analysis under the economic loss rule is on the source of the duties alleged to have been breached.  Thus, our formulation of the economic loss rule is that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty.[65]

"When an independent duty exists, the economic loss rule does not bar a tort claim 'because the claim is based on a recognized and independent duty of care and thus does not fall within the scope of the rule.'"[66]  Without an independent duty, the economic loss rule bars economic recovery "in negligence absent physical property damage or bodily injury."[67]  The Utah Supreme Court has recently recognized a new limited fiduciary duty that exists when the fiduciary has an inherent self interest in the relationship.[68]  However, the limited fiduciary duty does not permit any and all tort claims to be brought, and exempted from the economic loss rule.[69]  Only the tort claims stemming from the independent, limited fiduciary duty are permitted as outside the scope of the economic loss rule.[70]

---

[64]10 P.3d 1267, 1269 (Colo. 2000); *Hafen v. Strebeck*, 338 F.Supp. 2d 1257, 1266 (D. Utah 2004).

[65]*Grynberg*, 10 P.3d 1256, 1259 (Colo. 2000).

[66]*Hermansen v. Tasulis*, , 48 P.3d 235, 240 (Utah 2002) (quoting *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1263 (Colo. 2000)).

[67]*SME Indus., Inc. v. Thompson, Ventulett, Stainback and Assoc.*, 28 P.3d 669, 680 (Utah 2001) (quoting *American Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1189 (Utah 1996)).

[68]*Davencourt at Pilgrims Landing Homeowners Assoc. v. Davencourt at Pilgrims Landing, LC*, --- P.3d ---, 2009 WL 3151197, at * 8 (Utah Oct. 2, 2009) (creating a new limited fiduciary duty based on the relationship of the parties and the inherent conflict of interest).

[69]*Id*. at *9.

[70]*Id*.

The existence of a duty, either broad or limited, is the dispositive factor here.  Defendant must establish a duty in order to plead a claim of negligence and negligent misrepresentation.[71]  Moreover, in order for the economic loss rule to be inapplicable to the negligence claim an independent duty must exist.  In its memorandum, Defendant conceded this point by arguing that negligent misrepresentation is not barred by the economic loss rule, but does require an independent common law duty.[72]  Defendant is correct on both accounts.[73]  Because the parties had a contractual relationship and Defendant suffered economic loss due to that relationship, without an independent duty the negligence claim would be barred under the economic loss rule and the negligent misrepresentation claim would fail because the duty element would not be met.

Whether a duty exists is a question of law to be determined by the court.[74]  "Ordinarily, no fiduciary relationship exists between a bank and its customer."[75]  Some states within the Tenth Circuit routinely find no fiduciary duty exists between a lender and borrower.[76]  Other courts in

---

[71]*Macintosh*, 2009 WL 953712, at *1; *Town of Alma,* 10 P.3d at 1263 (quoting *Keller v. A.O. Smith Harvestore Prods.*, 819 P.2d 69, 73 (Colo. 1991) (negligent misrepresentation is a tort claim based "not on principles of contractual obligation but on principles of duty and reasonable conduct.")).

[72]Docket No. 17 at 19.

[73]*Bower v. Stein Eriksen Lodge Owners Ass'n, Inc.*, 201 F.Supp. 2d 1134, 1143 (D. Utah 2002).

[74]*DeBry v. Valley Mortgage Co.*, 835 P.2d 1000, 1004 (Utah Ct. App. 1992).

[75]*Swenson v. Nat'l. City Mort. Co.*, 2009 WL 793004, at *4 (D. Utah Mar. 23, 2009).

[76]*Boykin v. CFS Enterprise, Inc.*, 2008 WL 4534400, at *3 (D. Kan. Oct. 6, 2008) ("Actions alleging negligence by a lender have generally proved unsuccessful in Kansas because of the lack of duty owed by the lender.") (internal citations omitted); *Ricotta v. Ocwen Loan Servicing, LLC*, 2008 WL 516674, at *7 (D. Colo. Feb. 22, 2008) ("Colorado law generally does not find a fiduciary duty to exist between a lender . . . and borrower") (internal citations omitted);

the Tenth Circuit have held the lender borrower relationship, without more, is fundamentally a creditor/debtor situation where no fiduciary duty exists, but a fiduciary duty may be created between a lender and a borrower depending on the specific facts surrounding the transaction.[77]  A fiduciary duty can be created when the lender "goes beyond simply providing money to the borrower and offers advice and consultation,"[78] when the lender is involved in the borrower's business, if the borrower lacks sophistication, or if the borrower is involved in a business with a special nature.[79]

Utah seems to follow this line of cases.  "In Utah, a fiduciary or confidential relationship will be found 'when one party, having gained the trust and confidence of another exercises extraordinary influence over the other party.'"[80]  To establish the type of special relationship to support an action for breach of fiduciary duty, a borrower must demonstrate something close to a course of dealing, with a history of reasonable reliance on the lender.[81]  Courts in other districts have similarly held that financial institutions do not owe a duty of care to a borrower when the lender's involvement in the loan transaction does not exceed the scope of its conventional role as a lender of money.[82]  However, liability to a borrower for negligence may arise when the "lender

---

[77]*Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 661 (Wyo. 2003) (quoting *Martinex v. Assocs. Fin. Serv. Co. of Colorado, Inc.*, 891 P.2d 785, 789 (Wyo. 1995)).

[78]*Id.* (internal citations omitted).

[79]*Id.* (internal citations omitted).

[80]*State Bank of Southern Utah v. Troy Hygro Systems, Inc.*, 894 P.2d 1270, 1275 (Utah Ct. App. 1995).

[81]*Id.*

[82]*Velasquez v. HSBC Mortgage Serv.*, 2009 WL 2338852, at *5 (D. Nev. July 24, 2009); *see Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991).

'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'"[83]

Because the issue of duty is a question of law determined by the Court, at this stage of the proceeding the Court must determine if there are enough facts alleged to find the existence of a duty. In this case, it is alleged that Plaintiff or its agents advised and convinced Defendant to take on the line of credit and their other financing options. This is not a case where a borrower goes into a bank and simply asks for a loan. Here, the loan was allegedly proposed, advised, and pushed onto Defendant. Defendant alleges that it was not a sophisticated investor and was relying on the expertise and advice of Plaintiff and its representatives. This seems to be the exact situation where the lender has "[gone] beyond simply providing money to the borrower."[84]

Because Defendant has alleged facts upon which the Court could find a duty existed, the Court must now determine if that duty was a broad, general fiduciary duty, or the newly enumerated limited fiduciary duty under *Davencourt*.[85] The contract states "UBS Bank and its affiliate act as creditors and, accordingly, their interests may be inconsistent with and, potentially adverse to, the Borrower's interests."[86] Because the parties do have some inherent conflicts of interest, the Court finds a limited fiduciary duty exists in this case.[87] Therefore in order for the tort claims to be exempt from the economic loss rule they must stem directly from the limited

---

[83]*Id*. (quoting *Wagner v. Benson*, 101 Cal. App. 3d. 27, 34 (1980)).

[84]*Birt*, P.3d at 661.

[85]*Davencourt*, 2009 WL 3151197, at * 8.

[86]Docket No. 16-3 at pg 4 ¶ K.

[87]*Davencourt*, 2009 WL 3151197, at * 8.

16

fiduciary duty.[88]

Plaintiff's limited fiduciary duty would be in terms of the line of credit.  The negligence claims both stem from a breach of duty, albeit a limited one, based on the lenders entrance into a domain beyond that of a usual money lender.[89]  Because both the negligence and the misrepresentation claim stem directly from the line of credit, the stricter limited fiduciary duty criteria is satisfied.  Therefore, the Court finds the economic loss rule does not bar either the negligence or the negligent misrepresentation claims at this time.

*B. Promissory Estoppel*

To make a claim for promissory estoppel, four elements must be shown:

> (1) [Defendant] acted with prudence and in reasonable reliance on a promise made by [Plaintiff]; (2) [Plaintiff] knew that [Defendant] relied on the promise which [Plaintiff] should reasonably expect to induce action or forbearance on the part of [Defendant]; (3) [Plaintiff] was aware of all material facts; and (4) [Defendant] relied on the promise and the reliance resulted in a loss to him.[90]

The parties disagree on the applicability of promissory estoppel based on case law regarding the ability to plead such a claim when a contract exists.  However, the Court does not need to address that issue because the Court finds on the face of the contract that it was not reasonable for Defendant to rely on the statements made by Plaintiff's agents regarding the structure of the line of credit.  Defendant alleges that Plaintiff promised Defendant that the line of credit account would be structured in way to prevent losses in excess of the amount maintained in Defendant's UBS Financial accounts.  However, the Contract clearly states otherwise.  Paragraph D of the

---

[88] *Id*. at *9.

[89] *Velasquez*, 2009 WL 2338852, at *5.

[90] *Richards v. Brown*, 2009 WL 3463363, at *12, (Utah Ct. App. Oct. 29, 2009).

contract states:

> Should the value of the securities in the collateral account decline below the required collateral maintenance requirements, UBS Bank USA may require that the borrower post additional collateral, repay part or all of the loan and/or sell the borrower's securities.  Any required liquidations may interrupt the borrower's long-term investment strategies and may result in adverse tax consequences.[91]

This clause not only shows that there is no stop gap structure in the line of credit, but acknowledges that funds in the UBS Financial account might be lost to the borrower's detriment in order to maintain the required collateral for the line of credit.  Because this clause is printed in bold and capital letters at the beginning of the document, it was unreasonable for Defendant to rely on statements that contradict the written contract.  Without reasonable reliance, Defendant is unable to claim promissory estoppel and thus has failed to state a claim upon which relief can be granted.

*C. Breach of Fiduciary Duty*

As previously stated, under ordinary circumstances no fiduciary relationship exists between a bank and its customer.[92]  In determining whether a fiduciary relationship exists, the Utah Supreme Court has instructed courts to consider factors such as: the relationship between the parties, whether one party has the power and does exert influence of the other, whether a person has a duty to act for the benefit of another, etc.[93]  A fiduciary relationship exists where there is a dependency by one party, and an assumption of duty by the other party to advise,

---

[91]Docket No. 16-3 pg 4.

[92]*Swenson*, 2009 WL 793004, at *4.

[93]*First Sec. Bank N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990).

counsel, and protect the dependent party.[94]  Plaintiff argues that no fiduciary relationship was created because (1) this was an arms-length borrower-lender situation and (2) the language in the contract expressly stating that "UBS Bank and its affiliate act as creditors and, accordingly, their interests may be inconsistent with and, potentially adverse to, the Borrower's interests."[95] Although Plaintiff's interests were and remain adverse to Defendant, it was reasonable for Defendant to believe that Mr. Mumford as their financial advisor was acting in their best interests.  Mr. Mumford's role in the transaction was to advise and counsel the Ibbetson's regarding their finances and financial choices.  It was his job to protect, within his power, the Ibbetson's from making bad financial choices and investments.  Because Mr. Mumford is, as previously discussed, Plaintiff's alleged agent, it is liable for Mr. Mumford's actions.  Therefore, this cause of action will not be dismissed at this time.

### V. Conclusion

Based on the above the Court finds sufficient facts to support a plausible agency relationship between Plaintiff and Mr. Mumford.  The Court further finds an independent, limited fiduciary duty existed between Plaintiff and Defendant.  The Court finds the tort claims stem directly from this limited fiduciary duty, and are therefore not precluded by the economic loss rule.  The Court finds no basis for promissory estoppel, but does find a basis for the fiduciary claim based upon the same reasoning applied to other tort claims.  It is therefore

ORDERED that Plaintiff's Motion to Dismiss Counterclaims (Docket No. 15) is DENIED as to the negligence, negligent misrepresentation, and fiduciary duty claims and

---

[94]*Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985).

[95]Docket No. 16-3 at 4.

GRANTED as to the promissory estoppel claim.


DATED   December 10, 2009.


BY THE COURT:


_____

TED STEWART
United States District Judge